## CITY OF LOUISVILLE MUNICIPAL HOUSING COMMISSION, v. PUBLIC HOUSING ADMINISTRATION.

Court of Appeals of Kentucky.

June 5, 1953.

As Modified on Denial of Rehearing

Oct. 16, 1953.

N. H. Dosker and James W. Stites, Louisville, for appellant.

David C. Walls, U. S. Atty., Charles F. Wood, Asst. U. S. Atty., Louisville, and Lawrence Davern, Washington, D. C., for appellee.

Charles I. Dawson, Earl S. Wilson and Lee Curd Miller, Louisville, amici curiæ.

COMBS, Justice.

Section 177 of the Constitution of Kentucky prohibits the Commonwealth from becoming an owner or stockholder in "any company, association or corporation". Section 179 prohibits any county or subdivision thereof, city, town or incorporated district from becoming "a stockholder in any company, association or corporation".

The question on this appeal is whether the City of Louisville Municipal Housing Com-

mission may, in view of these two sections of the Constitution, insure its housing projects in a mutual fire insurance company. The case was filed under 637 of the Civil Code of Practice by the Public Housing Administration, referred to as PHA, against the Municipal Housing Commission for the determination of this one question. The trial court found no constitutional prohibition against the Housing Commission carrying insurance with a mutual company.

The case arises in this manner: The Housing Commission requested bids on fire insurance for two of its housing projects. Bids were received from stock companies and from the Firemen's Mutual Insurance Company of Providence, Rhode Island, covering a five-year period. Whereas the bids of the stock companies called for premiums in an amount certain, the bid of Firemen's Mutual provided for an initial "premium deposit" with "estimated dividends" to the policy holder over the five-year period. The Housing Commission's contract with PHA requires that fire insurance be awarded to the lowest bidder, and the contract is so worded that estimated dividends of mutual companies must be considered in calculating the amount of the bid. It is conceded that under the terms of its contract with PHA the Housing Commission must accept the bid of Firemen's Mutual, if it may do so without violating the State Constitution. It should be noted that KRS 304.171 authorizes any governmental agency or public or private corporation to carry insurance with a mutual company.

It is argued by the Housing Commission that it is a state agency; that a mutual fire insurance company is a private corporation; that by statute, KRS 304.172(1), "A mutual insurer is owned by and shall be operated in the interest of its members"; that sections 177 and 179 of the Constitution prohibit the Commonwealth or any of its subdivisions from becoming an "owner or stockholder" in a private corporation; that when the Housing Commission accepts a fire insurance policy in a mutual company it becomes an owner or stockholder in the company in violation of the Constitution.

■■ Since the case requires a construction of the Constitution, we turn to two elementary aids in construction, to-wit: There is reserved to the people of Kentucky, acting through the Legislature, all governmental power not expressly or by necesssary implication denied them by the Constitution; and the words used in the Constitution must be given their plain and ordinary meaning.

■ We are unable to see how section 177 has any application. As already noted, that section prohibits the Commonwealth from becoming an "owner or stockholder" in "any company, association or corporation." Obviously, the Housing Commission is not the Commonwealth. But it is said that it is an agency of the Commonwealth. Perhaps it is. Admittedly, it is to the extent that it was created under authority of an enabling act of the General Assembly of the Commonwealth. Chapter 80, KRS. But that is not decisive. Kentucky Colonels and notaries public are also created in the name of the Commonwealth, by its Chief Executive, but that does not mean they are the Commonwealth or are bound by the prohibition found in section 177. We have no doubt the prohibition in that section is directed to the Commonwealth as such and not to an agency such as this Housing Commission is shown to be.

■ We now look to section 179. That section is directed to "any county or subdivision thereof, city, town or incorporated district". There is no contention the Housing Commission is either a county or subdivision of a county, a city or a town. But it is vigorously insisted that the Housing Commission is an incorporated district. We do not think it is, within the meaning of section 179. It is a political entity, of course; it is an incorporated body; it has some of the attributes of a state agency although it is controlled by the Mayor of Louisville and others appointed by him. In short, as the name signifies, it is a commission, organized under an enabling act of the General Assembly of Kentucky and operated by personnel of the City of Louisville so

as to participate in the housing program of the Federal Government. It is neither "fish nor fowl" within the definitive terms of sections 177 and 179. It may be said to be a hybrid, conceived for a purpose never contemplated by the framers of our Constitution.

It is true the Commission operates within certain territorial boundaries (KRS 80.460) but that does not transform the Commission into a District. It may be said generally that the authority of every Commission has certain territorial limitations, but it could hardly be said that every Commission is a District. In the ordinary meaning of the word, "Commission" denotes something different from "District." The word "Commission" is defined in Funk & Wagnalls New Standard Dictionary as "a body composed of several persons acting under lawful authority to perform some public service." The definition of "District" in the same dictionary is "a portion of territory specially set off or defined, as for judicial, political, educational, or other purposes." The two words are not synonymous.

 We arrive at our interpretation of sections 177 and 179 not only by considering what we conceive to be the ordinary and commonly accepted meaning of the words used, but also by consideration of the objectives of the framers of the Constitution. The history of section 177 was stated by this Court in Hager v. Kentucky's Children's Home Society, 119 Ky. 235, 83 S.W. 605, 607, 67 L.R.A. 815: "There was a time when the state was allowed to subscribe, and did subscribe, to the capital stock of various quasi public improvement companies, and loaned or gave its credits to such. It was to prevent a repetition of that practice by the state that the section was enacted." It is apparent that section 179 was enacted in order to place upon local governmental units the same general restrictions imposed upon the Commonwealth itself by section 177. The purpose behind both sections was to prevent local and state tax revenues from being diverted from normal governmental channels. This purpose will not be thwarted by the proposed action of the Housing Commission. None of the revenue of the Housing Commission is derived from local or state funds, and it has no authority to assess, levy or collect taxes in any form.

In order for this Court to hold that sections 177 and 179 prohibit the Housing Commission from insuring its properties in a mutual fire insurance company, we would have to read into those sections words which are not there. This we are not authorized to do.

In view of our conclusions on the points already discussed, we do not reach the other questions raised in the briefs.

The judgment is affirmed.