OPINION
COMBS, Judge.
The Calloway County Fiscal Court (Fiscal Court) appeals from an Order and Judgment of the Calloway Circuit Court denying its complaint for declaratory and injunctive relief. The Fiscal Court challenged the acts of the Board of Commissioners of the Murray-Calloway County Public Hospital (the Hospital), in creating and appropriating funds for Community Healthcare Foundation, Inc. (the Foundation), as violating § 179 of the Kentucky Constitution. Reviewing cross-motions for summary judgment, the circuit court found no constitutional violation in the Hospital’s creation and funding of the private corporation. We conclude that the court erred in determining that the Hospital was authorized to delegate its public duties to a private entity or to transfer public funds to the Foundation without the approval of the Fiscal Court. Therefore, we vacate and remand.
The facts relevant to this controversy are not in dispute. The Hospital is a public, non-profit corporation, created in the 1960’s by joint action of the City of Murray and the Calloway County Fiscal Court with public funds pursuant to KRS[2] *273 Chapter 273. The Hospital’s Bylaws provide that its affairs shall be managed by a Board comprised of the following members: the County Judge/Executive of Cal-loway County; the Mayor of Murray; the Chief of the Hospital’s medical staff; and eight citizens with staggered four-year terms, nominated by a committee of city and county officials.
The Hospital now sustains itself by revenues from its internal operations. However, the Fiscal Court and City of Murray initially raised monies for the acquisition of the Hospital through revenue bonds funded by local taxes. Furthermore, the Hospital acknowledges that both the city and county have lent their credit to support the issuance of revenue bonds (which remain outstanding) for making improvements to the Hospital.
In 1997, after exploring various alternatives for its corporate organization, the Hospital created the Foundation. The boards of the two entities have only two members in common. Thus, although the City of Murray and the Fiscal Court control the membership of the Hospital’s board, they do not retain such control over the Foundation.
The record does not disclose the reason for the Hospital’s re-structuring of its corporate organization or why it delegated certain of its activities to the Foundation. In its brief, the Hospital states that:
the Foundation was established to solicit and receive donated money and property for the Hospital and to conduct related healthcare-oriented activities.
(Appellee’s brief at p. 3). The Fiscal Court contends that the Hospital in reality sought to avoid public accountability and to circumvent the application of Kentucky’s Open Meetings and Open Records Laws.[3]
Regardless of its motives, the Hospital initially funded the Foundation with more than $1.35 million derived from various sources — including a testamentary bequest to the Hospital. In 1998, the Hospital voted to give 5% of its net profits to the Foundation. In 2000, the Hospital again transferred significant other monies to the Foundation. In all, more than $3,000,000 in public funds have been transferred to the Foundation.
The Fiscal Court raised and formally registered objections as to the Hospital’s re-structuring efforts — especially with respect to its divestiture and re-allocation of public funds. On May 3, 2000, the Callo-way County Attorney advised the Fiscal Court that he believed that the Hospital’s actions were illegal. On July 24, 2000, after a public hearing, the Fiscal Court adopted a resolution that provides in relevant part as follows:
WHEREAS, the Hospital’s Board has created a private 501(c)(3) corporation known as the Community Healthcare Foundation; and
WHEREAS, the Board of Commissioners of the Murray-Calloway County Public Hospital has transferred or has set aside for transfer over $1,350,000 of its assets to the Community Healthcare Foundation; and
WHEREAS, it appears that the intent of the Hospital Board is to transfer other assets and monies of the Hospital to said private Foundation; and
WHEREAS, it is the finding of the Cal-loway County Fiscal Court that the transfer of said assets is not in the public interest and does not serve a *274 public purpose in violation of Section 179 of the Kentucky Constitution.
The adoption of the resolution did not end the controversy. The Hospital responded by voting to “request” that the Fiscal Court file suit against it. Consequently, the Fiscal Court accepted the invitation and commenced the underlying action on May 16, 2001.
After the pleadings were closed, both the Fiscal Court and the Hospital moved for summary judgment. In ruling in favor of the Hospital, the Calloway Circuit Court determined that its actions in creating and funding the Foundation were authorized by KRS Chapter 273.
Because the Hospital is a non-stock, non-profit corporation established under KRS Chapter 273, it is governed by the provisions of KRS Chapter 273, which authorizes non-profit corporations to “use and deal in and with ... interests in ... other domestic or foreign corporations,” “to make donations for the public welfare or for charitable purposes” and “to have and exercise all powers necessary or convenient to effect any or all of the purposes for which the corporation is organized.” KRS 273.171. These provisions authorize the Hospital’s actions.
The Fiscal Court had argued that the Hospital’s transfer of public funds to the Foundation offended Section 179 of the Kentucky Constitution. In addressing that argument, the trial court cited numerous cases in which the transfer of public funds to private corporations had been upheld. It relied upon the Kentucky Supreme Court cases, Hayes v. State Property and Buildings Comm., Ky., 731 S.W.2d 797 (1987) and Dannheiser v. City of Henderson, Ky., 4 S.W.3d 542, 545 (1999), for the proposition that as long as public money is being spent for a “valid public purpose,” Section 179 of the Constitution is not violated.
The circuit court also determined that the resolution of the Fiscal Court condemning the transfer of public funds to the Foundation was of no significance. Instead, it concluded as a matter of law that the Foundation serves a public purpose, attributing the public purpose clearly underlying the Hospital to extend by analogy to its corporate creation:
[I]f the Hospital was established to serve public purposes (which appears indisputable since it was established by the City and County pursuant to KRS chapter 58, which relates to public projects sponsored by local governments), then the Foundation itself serves the same public purpose.
[[Image here]]
There are few activities that have a clearer link to public welfare than health care facilities.
In its appeal, the Fiscal Court contends that the trial court misinterpreted the body of case law involved in its analysis of § 179 of the Kentucky Constitution, which provides:
The General Assembly shall not authorize any county, or subdivision thereof, city, town, or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association or individual.
The purpose of this constitutional provision was articulated in City of Louisville Municipal Housing Commission v. Public Housing Administration, Ky., 261 S.W.2d 286, 288 (1953), as follows:
It is apparent that section 179 was enacted in order to place upon local governmental units the same general restrictions imposed upon the Commonwealth itself by section 177. The purpose behind both sections was to prevent local and state tax revenues *275 from, being diverted from normal governmental channels. (Emphasis added.)
The Fiscal Court argues that the cases cited by the appellees and relied upon by the trial court involve circumstances where a legislative body has appropriated public funds and has associated itself with a private entity having a public purpose. It does not disagree with the court’s general observation that § 179 is not violated by the transfer of public funds to a private entity if a public purpose is to be accomplished. However, in its resolution, the Fiscal Court had made a formal pronouncement and finding that the Foundation did not serve a valid public purpose. It contends that it has the exclusive authority to make such a determination as a legislative body.
The Hospital counters by arguing that § 179 is not an impediment to its proposal to transfer funds and to delegate some of its duties to the Foundation. Because the Foundation was designed to assist the Hospital in its mission of providing health care, the Hospital contends that the Foundation (by definition and as a matter of law) qualifies as having a public purpose and is thereby entitled to receive public funds. It also argues that it is well established that a hospital “may use a separate, private corporation as a vehicle for the accomplishment of its public purpose.” (Appellee’s brief, at p. 8.) In support of its argument that the Foundation constitutes a legitimate public purpose, the Hospital emphasizes the fact that the Foundation has been recognized by the Internal Revenue Service as a charitable corporation.
Nonetheless, we are not persuaded that the process employed by the Hospital is constitutional. The Fiscal Court is correct in arguing that the Hospital is not vested with the authority to determine what constitutes a “public purpose” with respect to the proper use of public funds. It relies on the venerable old case of Hager v. Kentucky Children’s Home Society, 119 Ky. 235, 83 S.W. 605 (1904):
These authorities clearly settle that the vital point in all such appropriations is whether the purpose is public; and that, if it is, it does not matter whether the agency through which it is dispensed is public or is not; that the appropriation is not made for the agency, but for the object which it serves; the test is in the end, not in the means. The limitation put upon the state government by the people is as to what things it may collect taxes from them for, to which it may apply their property through taxation; not upon the means by which or through which it will do it. It may well and wisely be left to the Legislature to say how it will dispense the state’s charities. Varying conditions, improved methods of treatment, changing circumstances affecting the ability of the people to provide for such charges, all bear upon the legislative discretion, and doubtless find a proper application in the measures finally adopted by that body. Yet back of all that must exist the power to do the thing in question — the power to make the provision. It is this power alone that the courts can deal with, and then only to the extent of determining whether it exists. Whether it is exercised, and how exercised, are manifestly matters of exclusive legislative discretion.
Id., 83 S.W. at 608-09. (Emphasis added.)
Hager holds that local governments may dispense funds through a municipal corporation such as the Hospital. However, a consistent thread running through Hager and its progeny is that all of these cases involve legislative appropriations for private endeavors. The power to “dispense the state’s charities” is one “of exclusive *276 legislative discretion.” Id. (Emphasis added.)
Although the courts have the final word on what constitutes a “valid public purpose,” that issue does not become ripe for a court’s adjudication until there first has been a legislative decision to undertake the expenditure. See also, Industrial Development Authority v. Eastern Kentucky Regional Planning Commission, Ky., 332 S.W.2d 274, 276 (1960), quoting Shean v. Edmonds, 89 Cal.App.2d 315, 200 P.2d 879, 885 (1948), for the proposition that “[t]he determination of what constitutes a public purpose is primarily a matter for legislative discretion.... ” Consequently, we hold that the trial court erred in failing to recognize the binding legal effect of the Fiscal Court’s resolution and in failing to defer to its determination (as the only legislative body involved) that funding the Foundation did not constitute a public purpose.
The Hospital was created by the City of Murray and Calloway County to provide health care, and it functions as their agent in providing that service. For nearly forty years, those two governmental entities had little or no objection to the Hospital’s management of its affairs. However, that lengthy period of harmonious supervision does not vitiate the reality of governmental control of the Hospital and its assets. The Hospital argues otherwise, however, citing Knox County Fiscal Court v. Knox County General Hospital, Inc., Ky.App., 528 S.W.2d 672, 675 (1975), for the proposition that it is a “separate legal entity” from the county and that its powers are “derived from its articles of incorporation and the general statutes (principally KRS Ch. 273) applicable to nonprofit corporations.”
We have examined both the Hospital’s Articles of Incorporation and KRS Chapter 273. We find no indication in either source that the Hospital is empowered to form and fund a separate corporation — nor it is authorized to divest itself of public funds in order to place them in the repository of a private corporation. The Hospital also recites the omission of the Fiscal Court to insert its veto power into the Hospital’s Articles of Incorporation. However, Knox provides no comfort or support on that point:
A fiscal court may sell or lease property for the purpose of being operated as a hospital, but if it is to be a county hospital it must remain under control of the governing body directly responsible to the county electorate, which is the fiscal court.... To the extent that it cannot override the governing body of the hospital it has given away its power, and that is what it cannot legally do. (Emphasis added.)
Id. at 674. Knox essentially finds the veto power both implied and inherent in the nature of the relationship between the Fiscal Court and the Hospital. It specifically finds that the governmental entity creating the Hospital cannot abdicate its veto power over the Hospital’s managerial functions.
As in the case before us, the Knox County Hospital, a nonprofit corporation created during the same era as the Murray-Calloway County Hospital, was managed for many years by a board appointed by the Knox County Fiscal Court. When a dispute arose some time later, the Knox County Hospital argued that the fiscal court did not have veto power over its management decisions. Like the appellee in this case, the Knox County Hospital initially prevailed over the fiscal court in circuit court. However, this Court held in Knox that the fiscal court was entitled to assume the management of the hospital and to “terminate its control by [the] directors ....” Id. at 672. Thus, the Hospital in this case has wholly misconstrued its entitlement to rely on Knox. Knox instead reinforces our holding that the ultimate *277 control of the public Hospital remains subject to the Fiscal Court and that the Hospital’s action in forming the Foundation was an ultra vires usurpation of the authority of the Calloway County Fiscal Court.
The judgment of the Calloway Circuit Court is vacated, and this matter is remanded for further proceedings consistent with this opinion.
ALL CONCUR.

. Kentucky Revised Statutes.

. In their answer to the complaint, the Hospital and Foundation admitted that the Foundation was not subject to the Kentucky Open Records and Open Meetings Laws. However, they denied that avoidance of those laws was the “sole purpose in establishing the Foundation.” (Emphasis added.)