RENDERED: DECEMBER 29, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0139-TG
(2021-CA-0479)

ROBERT STIVERS, IN HIS OFFICIAL                                      APPELLANTS
CAPACITY AS PRESIDENT OF THE
KENTUCKY SENATE; DAVID W. OSBORNE, IN
HIS OFFICIAL CAPACITY AS SPEAKER OF
THE KENTUCKY HOUSE OF
REPRESENTATIVES; AND THE LEGISLATIVE
RESEARCH COMMISSION

ON APPEAL FROM THE FRANKLIN CIRCUIT COURT
V.                        HONORABLE PHILLIP J. SHEPHERD, JUDGE
NO. 21-CI-00089

ANDY BESHEAR, IN HIS OFFICIAL CAPACITY                              APPELLEES
AS GOVERNOR OF THE COMMONWEALTH
OF KENTUCKY; ERIC FRIEDLANDER, IN HIS
OFFICIAL CAPACITY AS SECRETARY OF THE
CABINET FOR HEALTH AND FAMILY
SERVICES

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REMANDING**

Legislative immunity protects legislators from lawsuits arising from speech or debate in the General Assembly. At issue in this case is whether the President of the Kentucky Senate, the Speaker of the Kentucky House, and the Legislative Research Commission (collectively "the Legislative Defendants") are immune from a declaratory judgment action brought by executive branch officials challenging the constitutionality of certain laws. We conclude that the Legislative Defendants are immune from suit on this record. Thus, we reverse

the circuit court's denial of the Legislative Defendants' motion to dismiss and remand the case to the circuit court with instruction to dismiss all claims against the Legislative Defendants with prejudice.

## I. FACTS AND PROCEDURAL BACKGROUND

In the 2021 session, the General Assembly passed several laws limiting the Governor's power during emergencies. Specifically, HB 1[1] provided businesses, school districts, and other specified groups could remain open and fully operational during the COVID-19 pandemic and during future emergencies related to illness or disease so long as they comply with all guidance from the Centers for Disease Control or the Executive Branch, whichever guidance is least restrictive. SB 1[2] amended Kentucky Revised Statutes (KRS) Chapter 39A, the emergency response statutes, by, among other provisions, limiting declared states of emergency to thirty days absent extension by the General Assembly; granting the General Assembly the power to terminate a declaration of emergency at any time; and requiring the Attorney General's written approval before the Governor may suspend a statute during an emergency by executive order. SB 2[3] limited the Governor's ability to respond to emergencies through emergency administrative regulations and amended KRS 214.020, the statute governing the ability of the Cabinet for

---

[1] 2021 Ky. Acts ch. 3, effective February 2, 2021.
[2] 2021 Ky. Acts ch. 6, effective February 2, 2021.
[3] 2021 Ky. Acts ch. 7, effective February 2, 2021.

Health and Family Services ("CHFS") to respond to infectious or contagious disease. Finally, HJR 77[4] terminated several executive public-health orders, including the order and regulation requiring that facial coverings be worn in many public places.

The Governor and Secretary of CHFS[5] filed a legal action in the Franklin Circuit Court seeking a declaration that SB 1, HB 1, SB 2, and HJR 77 were unconstitutional in February 2021. Simultaneous to the filing of the action, the Governor moved the circuit court for injunctive relief to prevent enforcement of the challenged legislation. The suit named Kentucky Senate President Robert Stivers, Speaker of the Kentucky House David Osborne, the Legislative Research Commission ("LRC"), and Daniel Cameron, in his official capacity as Kentucky Attorney General, as defendants.

On March 3, 2021, the circuit court granted a temporary injunction in favor of the Governor that stayed implementation of HB 1, SB 1, SB 2, and HJR 77 (which was included by amendment to the temporary injunction on April 7, 2021). March 1, amid litigation concerning injunctive relief, the Legislative Defendants moved the circuit court to dismiss them from the case, asserting that they were shielded from legal action by legislative immunity. The Franklin Circuit Court denied the Legislative Defendants' motions to dismiss on April 12, 2021.

---

[4] 2021 Ky. Acts ch. 168, effective March 30, 2021.

[5] For simplicity, we refer to the original plaintiffs in this action as "the Governor."

3

Following the circuit court's grant of injunctive relief, the case moved on two separate trajectories. On one path, the Attorney General sought appellate relief from the circuit court's temporary injunction, which was decided by our decision in *Cameron v. Beshear*.[6] On the other path, the Legislative Defendants appealed the circuit court's denial of their motion to dismiss.

The present action addresses only the Legislative Defendants' appeal from the circuit court's order denying their motion to dismiss, which rejected the Legislative Defendants' claims that they were immune from suit because of legislative immunity. We address the parties' arguments below.

## II. STANDARD OF REVIEW

In the present appeal, we review the circuit court's denial of the Legislative Defendants' motion to dismiss. Ordinarily, a trial court's denial of a motion to dismiss is not appealable.[7] However, this Court has applied the collateral order doctrine to interlocutory appeals of government officials claiming immunity and held orders denying such immunity are "appealable even in the absence of a final judgment."[8] "[T]he purpose of allowing an immunity issue to be raised by interlocutory appeal is 'to address substantial claims of right which would be rendered moot by litigation and thus are not subject to meaningful review in the ordinary course following a final

---

[6] *See Cameron v. Beshear*, 628 S.W.3d 61, 78 (Ky. 2021).

[7] *See* Kentucky Rules of Civil Procedure (CR) 54.01.

[8] *Breathitt Cnty. Bd. Educ. v. Prater*, 292 S.W.3d 883, 886–87 (Ky. 2009).

4

judgment.'"[9] Because the Legislative Defendants in this case claim that they are entitled to legislative immunity and, thus, dismissal of the claims against them, we find their interlocutory appeal on this matter appropriate for our review. And in performing this review, we consider the application of legislative immunity de novo, granting no deference to the trial court's determination.[10]

### III. ANALYSIS

Like the federal constitution, the Kentucky Constitution divides the powers of the government into three distinct departments or branches: the legislative, executive, and judicial departments.[11] The Kentucky Constitution also expressly forbids one department from exercising powers belonging to the others, except in specified instances.[12]

This case illuminates the tension among the three branches of government. The Governor argues that the challenged legislation encroaches on his authority as the executive to "take care that the laws be faithfully executed."[13] Alternatively, the Legislative Defendants contend that the Governor's lawsuit hinders the legislative power by quelling speech and debate

---

[9] *Baker v. Fields*, 543 S.W.3d 575, 577 (Ky. 2018) (*quoting Prater*, 292 S.W.3d at 886).

[10] *See Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006); *see also Jefferson Cnty. Fiscal Ct. v. Peerce*, 132 S.W.3d 824, 825 (Ky. 2004).

[11] Ky. Const. § 27.

[12] Ky. Const. § 28.

[13] Ky. Const. § 81.

within the legislative chambers.[14] And the judicial branch has already been involved in round one of the clash between the other two branches when the trial court enjoined enforcement of the challenged legislation during the 2021 Legislative Session.

As the court of last resort in the Commonwealth, we are in the unenviable position of resolving the dispute between the branches of government. We conclude that the Legislative Defendants are constitutionally entitled to immunity from suit on this record under Section 43 of the Kentucky Constitution. As a result, we reverse the circuit court's denial of the Legislative Defendants' motion to dismiss.

## A. The History of Legislative Immunity

Legislative immunity in the United States traces its origins to a multi-century struggle between the English Crown and Parliament.[15] "In England's earliest days, 'all powers were royal,' including the power to legislate, and it was only 'over time, as a result of specific struggles,' that Parliament assumed 'various of those powers.'"[16]

---

[14] Ky. Const. § 29 ("The legislative power shall be vested in a House of Representatives and a Senate, which, together, shall be styled the 'General Assembly of the Commonwealth of Kentucky.'").

[15] *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 361 (6th Cir. 2022) (citing *United States v. Johnson*, 383 U.S. 169, 177–78 (1966)); *see also Baker v. Fletcher*, 204 S.W.3d 589, 593–94 (Ky. 2006) (explaining that "the privilege [of legislative immunity] is a century older than our federal constitution, dating at least to the time of the English Bill of Rights of 1689").

[16] *Kent*, 33 F.4th at 361 (quoting Michael W. McConnell, *The President Who Would Not Be King* 74 (2020)).

In the 1600s, "[e]fforts to constrain the Crown produced the Petition of Right, which imposed 'institutional checks' designed to 'wrest lawmaking . . . power from the King.'"[17] And the Glorious Revolution of 1688 "confirmed" the legislative supremacy of Parliament,[18] giving rise to the English Bill of Rights in 1689.[19] So the English Bill of Rights first codified the privilege of legislative immunity, declaring that "the freedom of speech, and debates or proceedings in Parliament, ought not to be impeached or questioned in any court or place out of Parliament."[20]

Before independence, many colonial assemblies adopted the English concept of legislative immunity.[21] After independence, jurisdictions in the United States followed suit. The federal constitution provides that "for any Speech or Debate in either House, [legislators] shall not be questioned in any other place."[22]

And, like most states' constitutions, the Kentucky Constitution includes a speech or debate clause that is nearly identical to that in the federal

---

[17] *Id.* (quoting Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 YALE L.J. 1672, 1688 (2012)).

[18] *Id.* (citing Jack N. Rakove, *The Origins of Judicial Review: A Plea for New Contexts*, 49 STAN. L. REV. 1031, 1055–56 (1997)).

[19] *Id.* (citing Alexander J. Cella, *The Doctrine of Legislative Privilege of Freedom of Speech and Debate*, 2 SUFFOLK UNIV. L. REV. 1, 4 (1968)).

[20] *Id.* at 362 (quoting Thomas P. Taswell-Langmead, *English Constitutional History* 624, 630 (London 1875)).

[21] *Id.* (citing Leon R. Yankwich, *The Immunity of Congressional Speech—Its Origin, Meaning and Scope*, 99 U. PA. L. REV. 960, 965 (1951), and Steven F. Huefner, *The Neglected Value of the Legislative Privilege in State Legislatures*, 45 WM. & MARY L. REV. 221, 231 & n.22 (2004)).

[22] U.S. Const. art. I, § 6, cl. 1.

Constitution.  Section 43 of Kentucky's Constitution states that "for any speech or debate in either House they shall not be questioned in any other place."[23]

## B.  Exploring the Parameters of Legislative Immunity

We begin our analysis, as we must, with the constitutional text.  "[W]ords used in the Constitution must be given their plain and ordinary meaning."[24]  Similarly, "where the language of the Constitution leaves no doubt of the intended meaning of the section under consideration, courts may not employ rules of construction."[25]  Finally, "in construing one section of a Constitution a court should not isolate it from other sections, but all the sections bearing on any particular subject should be brought into consideration and be so interpreted as to effectuate the whole purpose of the Constitution."[26]

The plain text of Section 43 provides an unqualified privilege preventing legislators from being questioned for any "speech" or "debate" in either "House."[27]  But that begs the question: what legislative activities constitute "speech" or "debate"?  Some activities are undoubtedly covered.  For instance, a legislator speaking in favor of a piece of legislation on the House or Senate floor certainly fits.  But what about conducting legislative investigations, drafting

---

[23] Ky. Const. § 43.

[24] *Bevin v. Commonwealth ex rel. Beshear*, 563 S.W.3d 74, 89 (Ky. 2018) (quoting *City of Louisville Mun. Hous. Comm'n v. Pub. Hous. Admin.*, 261 S.W.2d 286, 287 (Ky. 1953); *Court of Justice ex rel. Admin. Off. of the Cts. v. Oney*, 34 S.W.3d 814, 816 (Ky. App. 2000)).

[25] *Oney*, 34 S.W.3d at 816 (quoting *Grantz v. Grauman*, 302 S.W.2d 364, 366 (Ky. 1957) (citations omitted)).

[26] *Id.* (quoting *Grantz*, 302 S.W.2d at 366) (alteration omitted).

[27] *See* Ky. Const. § 43.

bills, or participating in political-party caucus meetings?  And to whom does "they" refer in Section 43?  It is axiomatic that legislators enjoy legislative immunity.  But what about legislative support staff, outside counsel, or interns?

Under persuasive federal authority, "speech" or "debate" as used in the United States Constitution encompasses a broad range of legislative activity. "Insofar as the [federal Speech or Debate] Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation[.]"[28]  And federal courts "have extended the privilege to matters beyond pure speech or debate in either House, but only when necessary to prevent indirect impairment of such deliberations."[29]  So federal courts have applied legislative immunity to a broad "sphere of legitimate legislative activity."[30]  To that end, federal courts have concluded that the acts of issuing subpoenas, holding committee hearings, and voting on bills are legislative functions protected by legislative immunity.[31]

---

[28] *Gravel v. United States*, 408 U.S. 606, 625 (1972).

[29] *Id.* (internal quotation and citation omitted).

[30] *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).

[31] *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502–06 (1975) (issuing subpoenas); *Doe v. McMillan*, 412 U.S. 306, 311–12, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) (holding committee hearings); *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (voting on bills); *see also Tenney v. Brandhove*, 341 U.S. 367, 377 (1951); *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880); *Kent*, 33 F.4th at 365 (holding that federal legislative immunity barred an action under 42 U.S.C. § 1983 regarding a

Our sister states have largely followed suit, applying legislative immunity to a broad range of legislative activity.[32]  Recently, in *Mesnard v. Campagnolo ex rel. County of Maricopa*, the Arizona Supreme Court noted that "legislative immunity applies to written reports, offered resolutions, voting, and other 'things generally done in a session of the House by one of its members in relation to the business before it.'"[33]  Centuries earlier, the Supreme Judicial Court of Massachusetts concluded that the legislative sphere referred to in Massachusetts's speech or debate clause was not confined to

> delivering an opinion, uttering a speech, or haranguing in debate; but will extend … to the giving of a vote, to the making of a written report, and to every other act resulting from the nature, and in the execution, of the office; and … every thing said or done by him, as a representative, in the exercise of the functions of that office, without inquiring whether the exercise was regular according to the rules of the house, or irregular and against their rules.[34]

Similarly, most states have broadly applied the terms "speech" or "debate" to cover a broad scope of legislative activity.

But there is scant binding precedent from this Court regarding the parameters of Kentucky's speech or debate clause.  Our predecessor Court

---

dispute over a vote to remove a state legislator from the Ohio House Democratic Caucus).

[32] *See, e.g.*, *Edwards v. Vesilind*, 790 S.E.2d 469, 483–84 (Va. 2016) (holding that state constitution's speech or debate clause barred trial court from compelling disclosure of legislative drafting materials about gerrymandering); *State v. Neufeld*, 926 P.2d 1325, 1333 (Kan. 1996) (concluding that conversation between defendant-legislator and second legislator, in which defendant threatened to tell second legislator's wife that he had been caught in a compromising position with other women unless he voted in a particular manner on pending legislation, was protected by state's speech or debate clause and was not admissible in a blackmail prosecution).

[33] 489 P.3d 1189, 1194 (Ariz. 2021) (quoting *Kilbourn*, 103 U.S. at 204).

[34] *Coffin v. Coffin*, 4 Mass. 1, 27 (1808).

recognized that "[l]egislative officers are not liable for their legislative acts."[35] Even so, much of this Court's discussion of legislative immunity is either non-binding dictum or fails to engage in reasoned analysis regarding the scope of legislative immunity under Section 43.

For instance, in *Baker v. Fletcher*, the majority opined that "absolute legislative immunity, even with its negative characteristics, is essential if separation of powers is to be respected and the Commonwealth's legislators are to be encouraged to speak and act candidly on behalf of citizens."[36] But *Baker*'s discussion of legislative immunity constituted dictum and is, while persuasive, not binding on this Court.

Based on the principle of stare decisis, only holdings of this Court in published opinions constitute binding precedent.[37] A "holding" is "[a] court's determination of a matter of law pivotal to its decision."[38] Alternatively, "dictum is anything 'not necessary to the determination of an issue on appeal.'"[39] But "the line between [a] holding and dictum is not always clear."[40]

---

[35] *Commonwealth v. Kenneday*, 82 S.W. 237, 238 (Ky. 1904) (internal quotation and citation omitted).

[36] *Baker*, 204 S.W.3d at 594.

[37] *See Matheney v. Commonwealth*, 191 S.W.3d 599, 614–26 (Ky. 2006) (Cooper, J., dissenting) (exploring the history and importance of the doctrine of stare decisis at length).

[38] *Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020) (quoting *United States v. Hardin*, 539 F.3d 404, 438 (6th Cir. 2008) (Batchelder, J., concurring in part and dissenting in part) (citing BLACK'S LAW DICTIONARY (8th ed. 2004)).

[39] *Id.* (quoting *United States v. Swanson*, 341 F.3d 524, 530 (6th Cir. 2003)).

[40] *Id.* (quoting *Metro. Hosp. v. United States Dep't of Health & Hum. Servs.*, 712 F.3d 248, 274 (6th Cir. 2013) (McKeague, J., dissenting) (emphasis omitted)).

11

"Holding and dictum are generally thought of as mutually exclusive categories. But it is not always immediately apparent whether a pronouncement of law is holding or dictum. One cannot tell by reading the statement in isolation, without reference to the overall discussion."[41]  Ultimately, "[w]hat separates [a] holding from dictum is better seen as a zone, within which no confident determination can be made whether the proposition should be considered holding or dictum."[42]

The discussion of legislative immunity in *Baker* is most appropriately categorized as dictum.  In *Baker*, state employees sought declaratory and injunctive relief against then-Governor Fletcher, arguing that the Governor lacked authority to suspend a statute providing all state employees a salary increase.  Neither legislators nor legislative staff were named as defendants in *Baker*.  The majority discussed legislative immunity as it opined that the legislature would have been a more appropriate defendant because the legislature caused the damages alleged by the plaintiffs.  Even so, as the dissent noted, *Baker*'s discussion of legislative immunity is dictum[43] because it was "not necessary to the determination of an issue on appeal."[44]

---

[41] *Id.* (quoting Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249, 1257 (2006)).

[42] *Id.* (quoting Leval, 81 N.Y.U. L. Rev. at 1258).

[43] *See Baker*, 204 S.W.3d at 600 (Cooper, J., dissenting) (explaining that there was no need to discuss the immunity of legislators).

[44] *See Freed*, 976 F.3d at 738.

The discussion of legislative immunity in *Philpot v. Patton*[45] is also dictum. In *Philpot,* two state senators sued the remaining state senators to challenge a Senate rule. The Court held that the claims were moot because the session had ended.[46] The Court then proceeded to discuss legislative immunity, stating,

> [T]he General Assembly is not immune from suit in a declaratory judgment action to decide whether the General Assembly has failed to carry out a constitutional mandate and that members of the General Assembly are not immune from declaratory relief of this nature simply because they are acting in their official capacity.[47]

But the Court had already concluded that the plaintiffs' claims were moot before discussing legislative immunity. So, as in *Baker,* the discussion of legislative immunity in *Philpot* was not *necessary* to the determination of an issue on appeal and is only persuasive authority for this Court.

In *Rose v. Council for Better Education Inc.*, the Court considered a claim that the legislature failed to provide an efficient system of common schools, in violation of Section 183 of Kentucky's Constitution.[48] In *Rose,* we concluded that "both the President *Pro Tempore* of the Senate and the Speaker of the House of Representatives, named in their respective capacities is sufficient to acquire jurisdiction over the General Assembly in this action."[49] Of crucial

---

[45] 837 S.W.2d 491 (Ky. 1992).

[46] *See id.* at 492–93.

[47] *Id.* at 493–94.

[48] 790 S.W.2d 186 (Ky. 1989).

[49] *Id.* at 205.

importance for today's case, however, *Rose* did not consider whether the legislative defendants in that case were entitled to legislative immunity under Section 43.

*Kraus v. Kentucky State Senate*[50] may provide some answers. In *Kraus*, a rejected workers' compensation administrative law judge ("ALJ") nominee brought tort claims and federal and state civil rights claims against the State Senate and the Worker's Compensation Board, alleging the ALJ-nomination process violated separation of powers.[51] The Court held that legislative immunity under the federal and state constitutions protected members of the State Senate from suit for damages allegedly arising from voting on executive appointments.[52] The Court summarily concluded, however, that members of the Workers' Compensation Board were not immune from suit.[53]

*Jones v. Board of Trustees of Kentucky Retirement Systems*[54] provides broad statements regarding immunity. In *Jones*, we held that the Governor and General Assembly were not immune from declaratory actions to decide whether they acted according to their constitutional mandate.[55] But *Jones* does little to help resolve the present case. *Jones*'s discussion of legislative immunity is premised on *Philpott* and *Rose*, neither of which rendered any

---

[50] 872 S.W.2d 433 (Ky. 1993).

[51] *Id.* at 434–35.

[52] *Id.* at 440.

[53] *Id.*

[54] 910 S.W.2d 710 (Ky. 1995).

[55] *Id.* at 713.

14

binding holdings regarding legislative immunity. And *Jones* is factually distinguished from the present case because it did not involve a suit between the executive and legislative branches. As a result, *Jones* is of little value here.

Finally, *Yanero v. Davis*,[56] which is cited by the Legislative Defendants, is not a legislative-immunity case. *Yanero* discussed related immunity doctrines, such as sovereign immunity, governmental immunity, and official immunity. But *Yanero* involved whether a county board of education and statewide athletic association were entitled to governmental immunity. The case mentions legislative immunity as one example of the doctrine of sovereign immunity, but *Yanero* engaged in no reasoned analysis about the proper application of legislative immunity. As such, *Yanero* is of little help in resolving the case at bar.

## C. Legislative Immunity Applies on this Record

Kentucky's speech or debate clause serves as a check against encroachment of the executive and judicial departments into the domain of the legislative branch. The legislative branch is undeniably empowered to make the laws of the Commonwealth. The legislature makes law by enacting bills. And the legislative branch votes on bills through speech and debate. So, "the purpose of legislative privilege is to protect the legislature from intrusion by the

---

[56] 65 S.W.3d 510 (Ky. 2001).

15

other branches of government and to disentangle legislators from the burden of litigation and its detrimental effect on the legislative processes."[57]

Here, the Governor sued the President of the Kentucky Senate, the Speaker of the Kentucky House, and the LRC for their involvement in passing laws that the Governor believes encroach upon the powers of the executive branch. Participation in supporting and passing bills falls fundamentally within the sphere of legitimate legislative activities. As a result, the Legislative Defendants are entitled to immunity from suit arising from their roles in passing the legislation at issue in this lawsuit.

Nor is there any question that the Legislative Research Commission enjoys the protection of legislative immunity under these circumstances. The LRC is an independent agency that operates as the administrative and research arm of the General Assembly. It is a sixteen-member statutory committee made up of the majority and minority party leadership of the Kentucky Senate and House of Representatives. Even when the term LRC is used more broadly to encompass legislative support staff, the privilege applies to legislative aides and commission-staff members who are engaged in legitimate legislative activity.[58] "For the purpose of construing the privilege, legislators and legislative aides [who are engaged in legislative activity] are to be 'treated as one.'"[59]

---

[57] *Vesilind*, 790 S.E.2d at 478.

[58] *Gravel*, 408 U.S. at 616.

[59] *Holmes v. Farmer*, 475 A.2d 976, 984 (R.I. 1984) (quoting *Gravel*, 408 U.S. at 616).

16

The Governor contends that this case is not about legislative speech or debate but instead about the constitutional validity of the challenged legislation. But in a legislative-immunity analysis, we focus on whether the challenged *conduct of the representatives* constitutes legitimate legislative activity. The Legislative Defendants were sued here because they supported and voted on the challenged legislation. Supporting and voting on legislation indisputably falls within the concepts of speech and debate in Section 43 of Kentucky's Constitution.

Moreover, legislative immunity is not rendered inapplicable simply because this case involves a tension between the powers of two branches of government. The Governor argues for an exception to legislative immunity when there is an allegation that the legislature has usurped the power of another branch of government. But far from narrow, the Governor's proposed exception would swallow the rule of legislative privilege. Such an exception to legislative immunity would allow litigants to avoid invocation of the privilege by simply pleading that a legislative enactment had encroached upon the powers of another branch of government. Such a broad exception risks quelling legislative speech and debate by allowing the other branches of government to subject legislators to the burden of litigation.

In fact, this case is an example of the need for legislative immunity. The Governor sued members of the legislature while the legislature was in session. And the Franklin Circuit Court enjoined enforcement of the challenged legislation during the same legislative session. Then, when vetoing related

17

legislation, the Governor stated that legislation related to the COVID-19 pandemic "directly violates a temporary injunction entered by the Franklin Circuit Court against the General Assembly itself, which could subject the body to a contempt of court citation."[60]  The message was clear: members of the legislature may have been held in contempt of court if they overrode the Governor's veto of HB 192.[61]  This type of inter-branch power struggle is precisely what legislative immunity seeks to prevent.

The fact that this action involves a disagreement between political branches over their respective powers encourages granting legislative immunity, not making a broad exception to it.  Again, "the purpose of legislative privilege is to protect the legislature from intrusion by the other branches of government[.]"[62]  As such, legislative immunity is most appropriately applied in situations where a coordinate branch of government seeks to use a court action to modify or influence legislative conduct that qualifies as legitimate legislative activity.

On balance, legislative immunity also protects the legitimacy of the other branches of government in our system of separation of powers.  For instance, legislative immunity prevents the judicial branch from being unnecessarily ensnared in political disputes between the other branches.  This case is an

---

[60] Andy Beshear, *Veto Messages from the Governor of the Commonwealth of Kentucky Regarding House Bill 192 of the 2021 Regular Session* 8 (Mar. 26, 2021), available at https://apps.legislature.ky.gov/record/21rs/hb192/veto.pdf.

[61] 2021 Ky. Acts 169, effective March 29, 2021.

[62] *Vesilind*, 790 S.E.2d at 478.

example. The application of legislative immunity in this case serves not only as a check against executive and judicial branch intrusion into legislative power but also works to balance the powers of all three branches of government by limiting political disputes among coordinate branches of government.

Even so, legislative immunity is not unlimited. "Broad though the ambit of protection for the 'legislative sphere' has become, it does not cover everything lawmakers do."[63] Legislative immunity "does not apply to 'activities that are casually or incidentally related to legislative affairs but not part of the legislative process itself.'"[64] For instance, even under the broad scope of the federal speech or debate clause, legislative immunity does not protect the political activities of legislators,[65] nor does it protect legislators engaged in criminal activity, even if the criminal activity is committed in furtherance of legislative activity."[66]

But we need not determine the outer limits of legislative immunity under Section 43 to resolve the present case. Here, the Governor sued legislators because of their roles in passing legislation that was allegedly unconstitutional. Suffice it to say that legislators' involvement in passing legislation—constitutional or not—unquestionably falls within the ambit of legitimate

---

[63] *Kent*, 33 F.4th at 364–65 (quoting *Gravel*, 408 U.S. at 624–25).

[64] *Olson v. Leach*, 943 N.W.2d 648, 654–55 (Minn. 2020) (quoting *United States v. Brewster*, 408 U.S. 501, 528 (1972)); *see also Holmes v. Farmer*, 475 A.2d 976, 983 (R.I. 1984) ("The scope of the privilege does not extend to actions by legislators outside of the legislative process.").

[65] *Brewster*, 408 U.S. at 512.

[66] *Gravel*, 408 U.S. at 621 n.12, 622.

19

legislative activity, if not squarely within the textual definitions of "speech" or "debate."

Of course, legislative immunity must be understood within the broader context of separation of powers. When reading the Kentucky Constitution, we do not isolate one section from other sections.[67] Instead, "all the sections bearing on any particular subject should be brought into consideration and be so interpreted as to effectuate the whole purpose of the Constitution."[68] So while legislative immunity is integral to separation of powers, it must be balanced with the powers delineated to the other branches.

To that end, "[l]egislative immunity and constitutional judicial review of legislative acts must coexist."[69] "The purpose of the protection afforded legislators is not to forestall judicial review of legislative action but to ensure that legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions."[70] And this Court has previously acknowledged, albeit in dictum, that "[i]t is not inconceivable that a circumstance could arise in which a party wishing to obtain judicial review of some aspect of legislative conduct would be unable to identify a[ ] proper non-legislator defendant."[71] So legislative immunity may be

---

[67] *Bevin*, 563 S.W.3d at 84.

[68] *Id.* (internal quotation omitted).

[69] *Baker*, 204 S.W.3d at 595.

[70] *Powell*, 395 U.S. at 505.

[71] *Baker*, 204 S.W.3d at 596 n.32.

20

required take a back seat to allow for judicial review where none would be possible if the privilege were applied.

But we need not resolve any potential conflicts between judicial review and legislative immunity in this case. This is not a case where judicial review of the challenged legislation is only available by suing a legislator-defendant.

The Legislative Defendants contend that the Governor could promulgate a rule that lasts longer than thirty days, contrary to the challenged legislation, and then the Governor could either: (1) bring an affirmative enforcement action against an entity that does not comply with the regulation or (2) he could wait to be sued and defend his regulation in litigation against an entity that chooses not to comply with the regulation. The Governor argues that the Legislative Defendants' proposed avenue for judicial review requires him to break the law to test the challenged legislation in court. And the Governor correctly notes that he took an oath to support the Constitution of the United States and the Constitution of this Commonwealth.

But the Governor's argument on this point is unpersuasive. This legal action is premised on the Governor's belief that the challenged legislation violates the Kentucky Constitution. To put a finer point on it, as the Governor sees it, compliance with the challenged legislation would be unconstitutional and, therefore, a violation of his oath to support the Constitution of this Commonwealth. That is not to say that the executive branch is free to disregard or refuse to enforce statutes that it dislikes by summarily concluding that they are unconstitutional. It is simply to say that where there is a

21

reasonable legal argument that a statute violates the Kentucky Constitution, the executive branch must carefully choose how to ensure that the laws are faithfully executed. Here, taking the Governor at his word, the Governor has concluded that the challenged legislation violates the principle of separation of powers as outlined in Kentucky's Constitution. As such, in the Governor's view, promulgating a regulation that violates the challenged legislation would not force the Governor to break the law to tee up a legal constitutional challenge involving non-legislative defendants.

Of course, hard cases will exist on the margins. And both the Legislative Defendants and Amici acknowledge that cases may arise where a party seeking judicial review of legislative action may be unable to identify a non-legislative defendant. For now, we expressly reserve ruling on whether legislative immunity would preclude suit against legislators where no conceivable non-legislative defendants exist and no other remedy is available. This Court does not render advisory opinions,[72] and this is not a case in which judicial review of the challenged legislation is impossible except by suing legislative defendants.

## D. We Do Not Consider Alternative Arguments

Having concluded that the Legislative Defendants are entitled to legislative immunity under Section 43 of the Kentucky Constitution, we need not consider the Legislative Defendants' statutory and prudential arguments.

---

[72] *See Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky. 2007) ("It is a fundamental tenet of Kentucky jurisprudence that courts cannot decide matters that have not yet ripened into concrete disputes. Courts are not permitted to render advisory opinions.") (citations omitted).

On this record, the Governor is precluded under Kentucky's speech or debate clause from suing the Legislative Defendants for their involvement in passing allegedly unconstitutional legislation. Any further discussion would constitute non-binding dictum and would result in this Court issuing an impermissible advisory opinion.

## IV.    CONCLUSION

The health of our state government depends on a system of three separate but equal branches of government. Like the federal constitution, the Kentucky Constitution "diffuses power to better secure liberty" but also "contemplates that practice will integrate the dispersed powers into a workable government."[73] The constitutional privilege of legislative immunity exists to prevent encroachment of the executive and judicial branches into the legislative sphere and protects robust and open debate within the legislative chambers. Here, the Governor sued the Legislative Defendants for their roles in supporting and passing laws he considers unconstitutional. The Legislative Defendants' activity falls squarely within the ambit of legitimate legislative activity. As a result, the Legislative Defendants are entitled to immunity from suit on this record. The judgment of the Franklin Circuit Court is reversed and the action is remanded to the Franklin Circuit Court with instruction to dismiss all claims against President Stivers, Speaker Osborne, and the LRC with prejudice.

All sitting. All concur.

---

[73] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring in the judgment and opinion of the Court).

23

COUNSEL FOR APPELLANTS:

David Earl Fleenor
Office of the Senate President

David Eric Lycan
Office of the Speaker of the House

Gregory Allen. Woosley
Legislative Research Commission

Paul Emmanuel Salamanca


COUNSEL FOR APPELLEES:

Steven Travis Mayo
Taylor Allen Payne
Marc Griffin Farris
Laura Crittenden Tipton
Office of the Governor

LeeAnne Edmonds Applegate
Wesley Warden Duke
Office of Secretary of the Cabinet
for Health and Family Services

COUNSEL FOR AMICUS CURIAE,
COMMONWEATH OF KENTUCKY
EX. REL. ATTORNEY GENERAL
DANIEL CAMERON:

Matthew Franklin Kuhn
Office of Solicitor General